IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MICHELLE D. OWEN                                                                    PLAINTIFF

V.                                           NO. 12-3071

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying her claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

Plaintiff filed her applications for DIB and SSI on January 29, 2010, alleging disability since January 5, 2009, due to "1. Bad back, left shoulder and left arm, feet, depression." (Tr. 141-152, 172, 176). An administrative hearing was held on December 17, 2010, at which Plaintiff appeared with counsel and testified. (Tr. 24-78).

By written decision dated June 23, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - degenerative joint

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

disease of the thoracolumbar spine status post remote surgery, history of a left fibula fracture, osteoarthritis of the feet and left shoulder impingement with probable rotator cuff tear. (Tr. 11). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that the claimant is able to only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl and cannot climb ladders, ramps and scaffolds. The claimant also cannot perform work overhead and is limited to frequent but not constant reaching in all other directions with the non-dominant left hand.

(Tr. 14). With the help of a vocational expert (VE), the ALJ determined Plaintiff was not capable of performing her past relevant work, but that there were other jobs Plaintiff would be able to perform, such as clerical - an example being call out operator; assembler - an example being optical lens inserter; and machine tender - an example being a convex-grinder operator. (Tr. 18-19). Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request on May 24, 2012. (Tr. 1-3). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 8, 9).

I. **Evidence Presented:**

Plaintiff was born in 1964 and completed grade twelve. (Tr. 28, 172). Although Plaintiff's onset date is January 5, 2009, the record contains medical records as early as 1999, when Plaintiff was being treated by her treating physician, Dr. Robin C. Williams. (Tr. 294). The records also

reveal that over the next six years, Plaintiff was treated by Dr. Williams for various ailments, the most noteworthy being: back pain; depression; anxiety; cervical strain/muscle strain-mid back; right upper quadrant pain and nausea; diabetes mellitus II; hyperlipidemia; and hypertension. (Tr. 270, 273-274, 277, 281-284, 289, 294).

On May 27, 2005, Plaintiff was involved in a motorcycle wreck and was seen at White River Medical Center, complaining of dizziness and left shoulder pain. (Tr. 296). A CT of her abdomen revealed cholelithiasis[2] with no evidence for cholecystitis.[3] (Tr. 297).

On May 31, 2005, Plaintiff saw Dr. Williams, complaining of having dizzy spells. Plaintiff was assessed with depression, motorcycle accident, diabetes mellitus II, and high cholesterol. (Tr. 269).

On July 7, 2005, Plaintiff again saw Dr. Williams, still complaining of pain in her left shoulder, lower abdomen, constipation, and having dizziness off and on. (Tr. 268). Dr. Williams assessed Plaintiff as follows:

> 1. Motorcycle accident with contusion head, left elbow, left chest/abd and left shoulder
> 2. DM II
> 3. Depression
> 4. High cholesterol
> 5. Cholelithiasis/poss. Ch. Cholecystitis

(Tr. 268).

On March 24, 2006, Dr. Williams diagnosed Plaintiff with COPD/bronchitis, and advised Plaintiff to quit smoking. (Tr. 267).

---

[2] Cholelithiasis - Presence of concretions in the gallbladder or bile ducts. Stedman's Medical Dictionary 366 (28th ed. 2006)

[3] Cholecystitis - Inflammation of the gallbladder. Id. at 365.

Plaintiff next presented herself to White River Medical Center on October 18, 2006, complaining of back pain - lower left side. (Tr. 300). The report noted that Plaintiff smoked tobacco and had a history of methamphetamine abuse. (Tr. 301). It also noted that there was no CVA tenderness, normal inspection, no scoliosis, no pain with straight leg raise, and her range of motion was limited due to pain. (Tr. 301). There was paraspinal tenderness in the left lower back area. (Tr. 301). Plaintiff was able to ambulate normally, denied parasthesias or extremity weakness, and complained of numbness of her left lower extremity. (Tr. 302).

On October 19, 2006, Plaintiff saw Dr. Williams for follow-up from her visit to White River Medical Center. (Tr. 266). At that time, Plaintiff complained of left hip pain radiating down, and needed something for pain. (Tr. 266). She was reported to be smoking ½ pack of cigarettes per day. (Tr. 266). Plaintiff was assessed by Dr. Williams with low back strain and degenerative disc disease - L-spine with low back pain. (Tr. 266).

One year later, on October 19, 2007, Plaintiff reported to Dr. Williams that she had frequent headaches, pain on her scalp, left shoulder pain, numbness to her lower arm, and increased stress at home. (Tr. 265). She was assessed with left shoulder pain and depression/adjustment disorder. (Tr. 265).

On August 21, 2008, Plaintiff presented herself to Dr. Williams, complaining of a stiff neck and shoulder pain. Dr. Williams assessed Plaintiff with chronic cholecystitis; pharyngitis; and right shoulder pain (musculoskeletal pain) and advised Plaintiff to quit smoking. (Tr. 263).

On September 25, 2008, Plaintiff underwent a laparoscopic cholecystectomy with intraoperative cholangiogram.[4] (Tr. 309).

---

[4]Cholangiogram - The radiographic record of the bile ducts obtained by cholangiography. Id. at 364.

On May 31, 2009, Plaintiff presented herself to White River Medical Center after being involved in an altercation where she was punched in the face and head. A CT of the head was normal. (Tr. 341). It was noted at that time that Plaintiff smoked 1 pack of cigarettes per day, and she had no neck pain or new back pain. (Tr. 337-338). By the time Plaintiff filed her applications, she was taking cyclobenzaprine for muscle spasms, lexapro for depression, and vitamins. (Tr. 344).

A February 18, 2010 report from Mountain Home Christian Clinic reveals Plaintiff had pain in her left shoulder that radiated down her left arm and up to the neck. (Tr. 346). The impression was left shoulder pain, impingement possible RCT (rotator cuff tear). (Tr. 346).

On February 23, 2010, Plaintiff saw Dr. Williams with disability papers for him to fill out, and he assessed Plaintiff as follows:

1. Depression
2. DJD (degenerative joint disease), possible left rotator cuff injury
   DDD(degenerative disc disease) - L-spine
3. Smoker - advise quit.

(Tr. 315).

Dr. Williams also completed a RFC Questionnaire on February 23, 2010. (Tr. 354-358). In said report, Dr. Williams diagnosed Plaintiff with lumbar disc disease and depression. (Tr. 354). He noted that Plaintiff could not lift her left arm without pain, but also noted that Celebrex helped the pain in her left shoulder. (Tr. 354). Dr. Williams indicated that emotional factors did not contribute to the severity of Plaintiff's symptoms and functional limitations, but also indicated that depression affected Plaintiff's physical condition. (Tr. 354). He further reported that Plaintiff's experience of pain or other symptoms were never severe enough to interfere with attention and concentration needed to perform even simple work tasks, and concluded that Plaintiff was capable

-5-

of low stress jobs. (Tr. 355). Dr. Williams made several more findings, including the fact that Plaintiff was likely to be absent from work more than four days per month. (Tr. 358).

On February 26, 2010, Vann Smith, Ph.D., ACFE, ABPS, AAPM, conducted a neuropsychological evaluation. (Tr. 360-363). Dr. Smith indicated that Plaintiff reported smoking one half to one pack of cigarettes per day. (Tr. 360). Plaintiff's full scale IQ was 102, and Dr. Smith diagnosed Plaintiff as follows:

I. Cognitive Disorder, Non-psychotic, Secondary to General Medical Conditions

1. Diabetes, Type II, per patient history
2. Labile HTN, per patient history
3. DDD, per patient history
4. DJD, per patient history
5. TBI (multiple with Grade II and III concussion, per patient history)
6. Chronic, non-psychogenic, poorly controlled, pain disorder

(Tr. 363).

On March 1, 2010, non-examining consultant, Dr. Robert Redd, completed a Physical RFC Assessment. (Tr. 379-386). He found Plaintiff was capable of performing light work with limitations in her left upper extremity. (Tr. 380, 386).

A Mental RFC Questionnaire was completed on March 11, 2010, by Dr. Smith, wherein he found, inter alia, that Plaintiff would miss more than four days per month. (Tr. 367).

Three x-rays views of Plaintiff's left shoulder dated February 22, 2010, revealed minimal degenerative change of the acromioclavicular[5] joint. Otherwise, they were unremarkable views of the left shoulder. (Tr. 394).

On March 4, 2010, Plaintiff presented to Mountain Home Christian Clinic for follow-up of

---

[5]Acromioclavicular - Relating to the acromion and clavicle; denoting the articulation between the clavicle and the acromion of the scapula. Id. at 19.

-6-

her left shoulder pain. (Tr. 391). She had pain trying to lift her arm above her head. (Tr. 391). The doctor noted that Plaintiff had been in multiple car wrecks in the past, "likely causing some sort of soft tissue injury, likely of the rotator cuff." (Tr. 391). She said the pain had improved with Celebrex and her tramadol. (Tr. 391). The doctor assessed Plaintiff with left rotator cuff syndrome. (Tr. 391). On March 14, 2010, Plaintiff again went to Mountain Home Christian Clinic, complaining of pain in her left upper chest, radiating to her shoulder and scapula area. (Tr. 388). She was found to be very tender in the area of the medial left scapula, and her range of motion in her shoulder was normal. (Tr. 388).

On April 2, 2010, Nancy A. Bunting, Ph.D., conducted a Mental Status and Evaluation of Adaptive Functioning. (Tr. 398-401). Dr. Bunting noted that Plaintiff had been taking Lexapro for six years regularly and had no problems with it, and reported it as helping. (Tr. 398). Dr. Bunting also reported that Plaintiff's last drug use was marijuana one week prior to the evaluation. (Tr. 398). Dr. Bunting diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | cannabis abuse, polysubstance abuse, alcohol abuse in remission by report |
| Axis II: | No diagnosis |
| Axis III: | history of head trauma |
| Axis IV: | Moderate |
| Axis V: | GAF 50-60 |

(Tr. 400-401). Dr. Bunting reported that Plaintiff could do all of her self-care skills, could shop by herself, helped out with washing dishes, did her own laundry, and cooked. (Tr. 401). She further found that Plaintiff communicated and interacted in a socially and intelligible and effective manner; had some ability to cope with the typical mental/cognitive demands of basic work-like tasks; although her immediate recall was poor, her digit span was in the average range; and she had some

ability to deal with the public, handle work stress or change, and follow instructions. (Tr. 401). Dr. Bunting also found that Plaintiff had the ability to attend and sustain her concentration on basic tasks; some ability to sustain persistence in completing tasks; and had some ability to complete work-like tasks within an acceptable time frame unless her fatigue or forgetting interfered. (Tr. 401).

On April 6, 2010, Dr. Winston Brown completed a Psychiatric Review Technique form, concluding that Plaintiff's mental impairments were rated non-severe. (Tr. 417).

On June 18, 2010, Plaintiff went to Mountain Home Christian Clinic, complaining of high blood pressure, and was in pain from her left shoulder. (Tr. 389).  A Cervical Radiolopathy performed on that date revealed the odontoid[6] and lateral masses lined up well, and essentially normal appearing multiple views of the cervical spine. (Tr. 393).

On January 21, 2011, Dr. Shannon Brownfield conducted a General Physical Examination of Plaintiff. (Tr. 426-431). He diagnosed Plaintiff as follows:

> 1. Left shoulder pain and decreased rom
> 2. Left knee pain with pre. unknown fx.
> 3. LBP with scoliosis/lordosa and DDD/OA
> 4. B foot pain with OA
> 5. Depression.

(Tr. 430). Dr. Brownfield found that Plaintiff had moderate limitations with the use of her left shoulder; moderate limitations with prolonged standing/walking, and moderate to severe limitations with kneeling/stooping/lifting. (Tr. 430).

On January 25, 2011, Dr. David Oberlander, of Conway Neurology, performed sensory and

---

[6]Odontoid - 1. Shaped like a tooth. 2. Relating to the toothlike o. process of the second cervical vertebra. Id. at 1357.

motor conduction studies, and found there was "a relatively normal NCS-EMG of the left upper extremity-although it should be pointed out that this test could miss up to 15%[7] of cases or nerve root impingement." (Tr. 433).

## II.     Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical,

---

[7]The Court is unsure whether the report refers to 5% or 15%, but believes it to be 15%.

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3), 1382(3)(D). A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing her claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity (RFC).  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**IV. Discussion:**

Plaintiff raises the following issues on appeal: 1) The ALJ erred in his RFC determination; 2) The ALJ erred in his credibility findings; and 3) The ALJ erred in failing to follow "the treating physician's rule." (Doc. 8).

    **A.**    **RFC Determination:**

RFC is the most a person can do despite that person's limitations.  20 C.F.R. §404.1545(a)(1).  It is assessed using all relevant evidence in the record.  Id.  This includes medical records, observations of treating physicians and others, and the claimant's own description of her

limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

Specifically, Plaintiff contends that the ALJ's RFC made "no account of her experience of chronic pain, inappropriately ignored and did not consider the work-precluding limitations and assessment of her treating physician, Dr. Williams, and also did not properly account for the limitations assessed by the commissioner's own examining physician, Dr. Brownfield." (Doc. 8 at p. 10).

The ALJ determined that Plaintiff had the RFC to perform sedentary work with certain limitations, including the fact that she could not perform work overhead and was limited to frequent but not constant reaching in all other directions with the non-dominant left hand. The ALJ considered all of the medical evidence, including that of Plaintiff's treating physician, Dr. Williams, in making the determination. He noted that Plaintiff attributed her disabling pain in her left shoulder, between her shoulder blades, and in her low back, knees and feet. (Tr. 15). He also noted that Plaintiff testified that she had a constant, dull pain in her shoulder that was exacerbated by movement, as well as difficulty walking on gravel secondary to foot pain. (Tr. 15). He reported that although Plaintiff stated that she experienced left knee pain and pain in her mid-back, she also

-11-

said she was pain-free 85 percent of the time. (Tr. 15). The ALJ considered the medical evidence dated prior to the onset date, and also noted that after the onset date of January 5, 2009, Plaintiff did not complain of left shoulder pain until February 18, 2010, when she complained of such to Mountain Home Christian Clinic. (Tr. 346). When she returned to Dr. Williams five days later, she was diagnosed with depression, degenerative joint disease from a possible left rotator cuff injury, and degenerative disc disease of the lumbar spine. (Tr. 315). On February 22, 2010, x-rays of Plaintiff's left shoulder revealed minimal degenerative change of the acromioclavicular joint. Otherwise, the views of the left shoulder were unremarkable. (Tr. 394). In addition, on March 4, 2010, Plaintiff reported to the Mountain Home Christian Clinic that her left shoulder pain had improved with Celebrex and Tramadol. (Tr. 391). On June 18, 2010, a cervical radiolopathy revealed essentially normal appearing multiple views of the cervical spine. (Tr. 393).

      The ALJ addressed Dr. Williams' Medical Source Statement dated February 23, 2010, as well as the General Physical Examination report of Dr. Brownfield. (Tr. 16-17). The ALJ gave the opinions of Dr. Williams, Dr. Brownfield, and Dr. Oberlander significant weight as those of treating and examining physicians. (Tr. 17). He found Dr. Brownfield's opinion to be fairly consistent with that of Dr. Williams, and that those opinions were generally consistent with the medical evidence as a whole. (Tr. 17). He also noted that while Dr. Oberlander's nerve testing revealed relatively normal results, he did not rule out the possibility of nerve impingement. The ALJ believed that the restrictions indicated by those physicians were consistent with his RFC assessment. (Tr. 17). He also concluded that the limitations Dr. Williams gave that Plaintiff would need unscheduled breaks and miss several days a month were not supported by any objective findings in Dr. Williams' own records or other objective medical evidence of record. (Tr. 17). The Court agrees.

As noted by the ALJ, Plaintiff continued to work until 2009, when she was terminated for wrecking the delivery truck and subsequently tested positive for marijuana usage, not because of any disability. (Tr. 17).

The Court believes the ALJ's RFC assessment that Plaintiff was capable of sedentary work with certain limitations was supported by substantial evidence, and that the ALJ gave appropriate weight to the treating physicians' opinions.

**B.     Credibility Findings:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff argues generally that the ALJ did not follow the requirements of Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). In his decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not credible to the extent they were inconsistent with his RFC assessment. (Tr. 15).

The ALJ considered Plaintiff's daily activities, noting that Plaintiff had mild limitation in

AO72A
(Rev. 8/82)

the functional area of activities of daily living. (Tr. 13). On May 31, 2009, only six months before the alleged onset date, Plaintiff was involved in an altercation at around midnight, when she was punched in the face and head. (Tr. 339). Plaintiff was obviously able to socialize at midnight only six months prior to the time she was contending she was disabled. In addition, Plaintiff continued to smoke cigarettes although being advised to quit. (Tr. 263, 267, 315). "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v. Barnhart, 390 F.3d 535, 540-541 (8th Cir. 2004)(citations omitted).

Based upon the foregoing, as well as for those reasons given in Defendant's well-stated brief, the Court believes there is substantial evidence to support the ALJ's credibility findings.

### C.   "Treating Physician's Rule:"

For the same reasons given in addressing the ALJ's RFC findings above, the Court finds that there is substantial evidence to support the weight the ALJ gave to the treating physicians.

### IV.   Conclusion:

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 18th day of July, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-14-

AO72A
(Rev. 8/82)